IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ALEXANDER PATTERSON                                                                     PLAINTIFF

VS.                              Civil No. 2:14-cv-02256-MEF

CAROLYN W. COLVIN                                                                       DEFENDANT
Acting Commissioner, Social Security Administration

## MEMORANDUM OPINION

Plaintiff, Alexander Patterson, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I. Procedural Background**

Plaintiff protectively filed an application for DIB on September 13, 2010, (Tr. 396) alleging disability since January 1, 2012, due to alleged physical conditions, including "[d]iabetes with complications, HBP, severe back problems, vision problems, severe hand and arm problems (pain and numbness), headaches, and stomach ulcers." (Tr. 468) His application was denied initially on December 10, 2010, and upon reconsideration on January 31, 2011. (Tr. 274-276, 280-281) Plaintiff requested an administrative hearing (Tr. 282-283), and a hearing was held on September 13, 2011, before the Hon. Edward M. Starr, Administrative Law Judge ("ALJ"). (Tr. 189-217) Plaintiff was present and represented by his attorney, Mr. Andrew Flake. (Tr. 189) Plaintiff and a Vocational Expert ("VE"), Mr. John Massey, testified at the hearing. (Tr. 191-211, 211-216)

1

Plaintiff, born in 1971, was 40 years old at the time of this administrative hearing. (Tr. 192) He left school in the 8th grade, after being severely beaten by a group of students. (Tr. 192, 210-211) Plaintiff did not obtain a GED. (Tr. 192, 210-211) From 2005 until 2010, Plaintiff owned an auto dealership. (Tr. 195-207) Plaintiff stopped working in January of 2010 because of his health issues. (Tr. 195-207)

Following the hearing, on November 1, 2011, the ALJ entered an unfavorable decision denying Plaintiff's application for DIB. (Tr. 258-266) Subsequently, the Appeals Council granted Plaintiffs request to review the ALJ's decision and remanded the case for further evaluation and consideration. (Tr. 271-272) Following the Appeals Council's remand, a second administrative hearing was held on March 8, 2013. (Tr. 219-251) Plaintiff was present at this hearing and represented by an attorney, Mr. Fred Caddell. (Tr. 219-251) Plaintiff testified at the hearing. (Tr. 220-251) Following the hearing, on August 30, 2013, the ALJ issued an unfavorable decision, denying Plaintiff's application for benefits. (Tr. 170-182) In this decision, the ALJ found Plaintiff last met the insured status requirements under Title II of the Act on June 30, 2012, his date last insured. (Tr. 172) He also found Plaintiff had not engaged in substantial gainful activity from his alleged onset date of January 1, 2010, through his date last insured of June 30, 2012. (Tr. 172) The ALJ determined Plaintiff had severe impairments of diabetes mellitus and associated neuropathy, obesity, depression and a personality disorder, but Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 172-176)

In the decision, the ALJ considered the entire record and determined Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, except as follows:

> "[claimant] can occasionally balance, stoop, kneel, operate foot controls and frequently reach, finger, handle and operate foot controls. He cannot crouch or

2

>crawl. He must avoid hazards, including unprotected heights and moving machinery. He can occasionally tolerate humidity, temperature extremes and vibrations. Nonexertionally, the claimant can respond to supervision that is simple, direct and concrete. He can occasionally interact with supervisors, co-workers and the public." (Tr. 176-180)

The ALJ further determined that Plaintiff was unable to perform any Past Relevant Work ("PRW"); was a younger individual, age 18-44, on the date last insured; had a limited education and was able to communicate in English; and, that transferability of job skills was not material to the determination because using the Medical-Vocational Rules as a framework supported a finding that Plaintiff was "not disabled," whether or not Plaintiff had transferable job skills. (Tr. 180-181) Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 181-182) With the assistance of a vocational expert, the ALJ determined Plaintiff was capable of making a successful adjustment to other work and could perform the requirements of representative occupations such as: (1) assembler (DOT 726.684-110), of which there were 215 jobs in Arkansas and 17,760 in the national economy; (2) inspector (DOT 726.684-050), of which there were 45 jobs in Arkansas and 3,965 nationwide; and, (3) machine tender (DOT 731.685-014), of which there were 166 jobs in Arkansas and 14,100 nationally. (Tr. 181) The ALJ then concluded Plaintiff had not been under a disability, as defined in the Act, from January 1, 2012, the alleged onset date, through June 30, 2012, the date last insured. (Tr. 181-182)

Plaintiff requested a review of the hearing decision by the Appeals Council (Tr. 165), which was denied on October 23, 2014. (Tr. 1-4) Plaintiff then filed this action on December 15, 2014. (Doc. 1) This case is before the undersigned pursuant to the consent of the parties. (Doc. 7) Both parties have filed appeal briefs (Docs. 9, 10), and the case is ready for decision.

3

## II.  Applicable Law

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial

gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4).  Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982), *abrogated on other grounds by Higgins v. Apfel*, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 404.1520(a)(4)(v).

### III.  Discussion

Plaintiff makes the following arguments on appeal: (1) that the ALJ erred in his step two determination of Plaintiff's severe impairments; (2) that the ALJ erred in failing to perform a credibility analysis; and, (3) that the ALJ erred in his RFC determination in that he failed to provide the reasons for rejecting Dr. Al-Khatib's opinion. (Doc. 9, pp. 10-17) The Commissioner counters that substantial evidence supports the ALJ's severe impairment determination, the credibility determination, and the RFC determination.  (Doc. 10, pp. 6-15)

The Court has thoroughly reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and they are repeated here only to the extent necessary.

#### A.  Previous Severe Impairments

Plaintiff urges that the ALJ should have determined that his low back pain, carpal tunnel syndrome, narcolepsy, and headaches were severe impairments. At Step Two, a claimant has the burden of providing evidence of functional limitations in support of their contention of disability.

5

*Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Id.* (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); 20 C.F.R. § 404.1521(a)). "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two."  *Id.* (citing *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)).

In relation to his low back pain, Plaintiff relied on Dr. Ahmad Al-Khatib's opinion that he suffered from low back pain with intermittent bilateral lower extremity pain and paresthesia, and that he could stand only 15 minutes at a time, could walk only 10 minutes at a time, and could not walk a block at a reasonable pace on rough or uneven surfaces. (Tr. 10-11) Plaintiff also relied on the fact that the medical records showed that he had complaints of low back pain for years, and that Dr. Thomas Cheyne restricted him to "light duty." (Doc. 9, p. 11) Here, the medical records reflected that during the relevant time period, Plaintiff had undergone no treatment other than conservative care (pain medication) by his primary care physicians for his low back pain. (Tr. 544, 546, 642, 645, 647, 651) There was also no evidence he was referred to an orthopedist or a neurologist for an evaluation.

Also, during the relevant time period, a consultative examination was performed by Marie Pham-Russell, APN, and signed by Dr. Rebecca Floyd. (Tr. 573-576) Their examination results showed that Plaintiff had normal range of motion in his cervical and lumbar spine and extremities with no muscle spasms, negative straight leg raises, normal lower extremity strength and range of motion and no neurological deficits. (Tr. 573-576) Nurse Pham-Russell and Dr. Floyd concluded

only that Plaintiff was not safe to drive or operate machinery, given his medical history, and noted the visual impairment in his right eye. [1] (Tr. 576)

As for the weight to be given to Nurse Pham-Russell and Dr. Floyd's physical examination, the Court acknowledges Plaintiff's allegation that the ALJ erred in relying on the results of a general physical examination conducted by a nurse practitioner. Specifically, he argues that a nurse practitioner is not an acceptable medical source. According to the social security regulations, only acceptable medical sources can provide evidence to establish the existence of a medically determinable impairment, provide medical opinions, and be considered treating sources. 20 C.F.R. § 404.1527(a)(2). Acceptable medical sources include licensed physicians (medical or osteopathic doctors) and licensed or certified psychologists. 20 C.F.R. § 404.1513(a). Other sources, including nurse-practitioners, however, may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function. *See* 20 C.F.R. § 404.1513(d)(1); *see also* S.S.R. No. 06-03P, 2006 WL 2329939, *2 (2006).

Here, the ALJ used Nurse Pham-Russell's evaluation, in addition to an acceptable medical source, discussed immediately below, to determine the severity of Plaintiff's medically determinable impairments. And, as such, used it properly. We also note that the nurse practitioner's evaluation was endorsed by a medical doctor, entitling it to treating source weight. *See Lacroix v. Barnhart*, 465 F.3d 881, 886 (8th Cir. 2006) (*citing Shontos v. Barnhart*, 328 F.3d 418 (8th Cir. 2003) (allowing nurse practitioner, who was working as a part of a medical team with a doctor, to be treated as a treating source)). Accordingly, we can find no error in the ALJ's reliance on the nurse practitioner's evaluation.

---

[1] While Plaintiff asserts that a MRI, revealing a small annular tear with small central disc protrusion at L5-S1 and bulging annuli at L4-L5 and L5-S1, as well as Dr. Cheyne's opinion restricting Plaintiff to light duty, were both supportive of a severe impairment, both the MRI and Dr. Cheyne's opinion were well after the relevant time period and not pertinent to the matter before the Court.

Also, in determining whether Plaintiff's low back pain was a severe impairment, the ALJ considered Dr. Ahmad Al-Khatib's examination results, although this examination was performed on March 20, 2013, over eight months after Plaintiff's date last insured of June 30, 2012. (Tr. 173) The ALJ acknowledged that Dr. Al-Khatib found some numbness in Plaintiff's lumbar and cervical areas and that he walked with an antalgic gait; however, as the ALJ noted, Dr. Al-Khatib assigned Plaintiff only mild to moderate limitations in sitting, standing, walking and carrying objects. (Tr. 173, 853)

Plaintiff also urges that the ALJ erred in finding that bilateral carpal tunnel syndrome was not a severe impairment. Plaintiff relied on his continued complaints of weakness, numbness and tingling in his hands, as well as 1996 medical records from Truman Medical Center in Kansas City, where doctors recommended that he wear hand/wrist splints as treatment for bilateral hand and forearm fractures. Plaintiff also pointed to studies indicating neuropathy in his hands, consistent with carpal tunnel syndrome, and a NCS showing carpal tunnel moderately severe on the right and moderately on the left.

The medical records, during the relevant time period, showed that after the late 1990's, when Plaintiff was recovering from a physical assault, he did not complain to doctors of problems with his hands and wrists until February 8, 2012. (Tr. 648-649) In June of 2012, near the end of the relevant time period, Dr. Miles Johnson at Northwest Arkansas EMG Clinic, performed an electrodiagnostic study showing bilateral median neuropathy at the wrists consistent with carpal tunnel syndrome that was moderately severe on the right and moderate on the left. (Tr. 660-661) At that time, Dr. Johnson suggested Plaintiff obtain an evaluation for carpal tunnel release surgery, (Tr. 661) but it did not appear from the record that Plaintiff received any evaluation or further treatment until March and April of 2014, well after Plaintiff's date last insured. Furthermore,

8

Nurse Pham-Russell and Dr. Floyd's November 2010 physical examination demonstrated that Plaintiff had normal grip, with 70% on the right and 100% on the left. (Tr. 574)

Plaintiff also alleges the ALJ erred in determining that his narcolepsy was a non-severe impairment. Medical records indicate that for a few months during the relevant time period Plaintiff was treated with medication for narcolepsy and responded well. (Tr. 547-548) However, the medication was discontinued in June of 2010 so that Plaintiff could undergo cardiac testing for chest pain. (Tr. 538) While Plaintiff testified that he continued to have trouble falling asleep unintentionally (Tr. 200), medical records showed that from November of 2011 until May of 2012, Plaintiff's doctors were assessing him with insomnia. (Tr. 645, 652, 658)

Lastly, while Plaintiff alleges that the ALJ erred in determining that his headaches were not a severe impairment, medical records reveal that during the relevant time period there were few complaints of headaches and no medical treatment received.

In addition, with respect to Plaintiff's low back pain and carpal tunnel syndrome, Plaintiff complained of these impairments for many years, yet they did not prevent him from performing substantial gainful activity until January 1, 2010.

The Court believes there is substantial evidence to support the ALJ's decision relating to Plaintiff's severe impairments.

### B.  Credibility Determination

Plaintiff argues that the ALJ erred in failing to perform a credibility analysis. In making a credibility determination, the ALJ is required to consider all the evidence relating to Plaintiff's subject complaints, including: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitation and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and, (5) function restrictions. *See Polaski v. Heckler*, 739 F.2d 1320,

1322 (8th Cir. 1984). In so doing, the ALJ must also consider the claimant's prior work record, observations made by third parties, and the opinions of treating and examining physicians. *Polaski*, 739 F.2d at 1322.

An ALJ may not discount the Plaintiff's subjective complaints solely because the medical evidence fails to support them. *Id*. However, "[a]n ALJ . . . may disbelieve subjective reports because of inherent inconsistencies or other circumstances." *Wright v. Colvin*, 789 F.3d 847, 853 (8th Cir. 2015) (*citing Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) (quotation and citation omitted)). The Eighth Circuit has observed, "[o]ur touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

In this matter, the ALJ evaluated Plaintiff's credibility, and in doing so, highlighted Plaintiff's testimony that although he experienced difficulty controlling his fluctuating blood sugar levels and the side effects from such levels, such as diabetic neuropathy and pain in his hands and feet, the medical evidence showed that in 2010, Plaintiff's blood sugar levels had improved with medication and adjusted dosages. (Tr. 177-178) From March of 2011 through September 2011, while plaintiff was incarcerated, medical records from the Arkansas Department of Correction showed that his diabetes was monitored and controlled with insulin. (Tr. 177-178) After his release from prison, Dr. Michael Guyer's office notes showed that Plaintiff had trouble again with control of insulin levels and associated pain in his hands and feet, but also showed that Plaintiff was noncompliant with diet and medication. *Brown v. Barnhart*, 390 F.3d 535, 540-541 (8th Cir. 2004) (citations omitted) ("Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits.").

Moreover, despite Plaintiff's continued complaints of back and leg pain, Dr. Al-Khatib's neurological consultative examination revealed that, while Plaintiff experienced numbness in the

cervical and lumbosacral spine regions as well as diminished pinprick and light sensation in both feet and walked with an antalgic gait, he was diagnosed with low back pain, chronic neck pain, chronic headaches with migraine features and assigned only mild to moderated limitations in sitting, standing, walking and carrying objects. (Tr. 178) Furthermore, following Nurse Pham-Russell and Dr. Floyd's physical examination, Plaintiff was assigned limitations only associated with his alleged visual impairment and narcolepsy. (Tr. 178)

In Plaintiff's September 23, 2010 Function Report, Plaintiff stated that he lived alone, could feed and water his pet, could prepare his own microwave meals, could pay bills, and could count change. (Tr. 455-458) Plaintiff could pay attention for 30 minutes to one hour, could finish what he started, could follow written instructions fairly well, and could walk 100 feet before needing to stop and rest. (Tr. 455-461) He stated that he spent time watching TV, playing board games, and seeing friends and family. (Tr. 458-459) He also reported that he could manage chores around his house, such as laundry, loading the dishwasher, and tidying up around the house, but later testified that his mother had to assist him with such household chores as cleaning the dishes. (Tr. 456-457, 230-231) Plaintiff stated he could go out alone and shop for groceries, but testimony at the hearing showed that, because he could no longer drive to the food bank or shop for his groceries, his parents had to manage these chores for him. (Tr. 458, 235)

Although it is clear that Plaintiff suffers some degree of limitation, the Court finds that there are sufficient reasons in this case for determining Plaintiff's subjective complaints concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible prior to June 30, 2012. *See McDade v. Astrue*, 720 F.3d 994, 998 (8th Cir. 2013)

(credibility determination is entitled to deference if supported by good reasons and substantial evidence). Thus, the Court finds no basis for reversal on this issue.[2]

### C. RFC Determination and Conflicting Medical Opinions

Plaintiff argues that the ALJ erred in his RFC determination when he failed to provide the reasons for rejecting Dr. Al-Khatib's opinion. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545. A disability claimant has the burden of establishing his or her RFC. *Vossen v. Astrue*, 612 F. 3d 1011, 1016 (8th Cir. 2010). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

In deciding whether a claimant is disabled, the ALJ considers medical opinions along with "the rest of the relevant evidence" in the record. 20 C.F.R. § 404.1527(b). "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ

---

[2] Although it appears the ALJ did not discuss *each Polaski* factor, such a discussion is not required. *See Casey v. Astrue*, 503 F.3d 687, 695 (8th Cir. 2007) (recognizing "the ALJ's decision need not include a discussion of how every *Polaski* factor relates to the claimant's credibility").

12

may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007), *citing Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001) (internal citations omitted).

In the present case, the ALJ considered the statements of the treating and examining and non-examining physicians, Plaintiff's subjective complaints, and his medical records, when determining Plaintiff could perform a limited range of sedentary work. (Tr. 176-180) In addressing Plaintiff's physical limitations, the ALJ considered Plaintiff's diabetes mellitus and the fact that from 2007 until 2010, the condition ultimately improved with medication, followed up by modifications in the dosage. (Tr. 177) His diabetes remained controlled through October of 2011, when Plaintiff reported that he began experiencing problems with his blood sugar levels. (Tr. 178) Consequently, as addressed above, clinic notes also showed that Plaintiff was noncompliant with both his diet and medication. (Tr. 178) In addition to the diabetes mellitus, the ALJ took into consideration the impact of Plaintiff's obesity on his impairments. (Tr. 178)

Further, the ALJ addressed Plaintiff's low back pain and gave great weight to Dr. Al-Khatib's neurological assessment, who, as noted above, ultimately assigned Plaintiff only mild to moderate limitations in sitting, standing, walking, and carrying objects. (Tr. 178). Plaintiff did, however, allege that the ALJ failed to provide any reasoning for rejecting Dr. Al-Khatib's Medical Source Statement of Ability To Do Work-Related Activities, a document that accompanied his neurological evaluation. (Doc. 9, pp. 12-13) Although the ALJ did not discuss the Medical Source Statement, he discussed and gave great weight to Dr. Al-Khatib's explanation of his neurological evaluation and examination, which was performed on the same day. (Tr. 178) A treating physician's checkmarks on an MSS form are conclusory opinions that may be discounted if

13

contradicted by other objective medical evidence in the record. *See Martise v. Astrue*, 641 F.3d 909, 926 (8th Cir. 2011) (*citing Stormo v. Barnhart*, 377 F.3d 801, 805-06 (8th Cir. 2004)).

The ALJ also gave great weight to Nurse Pham-Russell and Dr. Floyd's November 22, 2010 physical examination. (Tr. 178-179) He noted that his reason for giving these medical opinions great weight was, with regard to Plaintiff's diabetes mellitus and related neuropathy and his obesity, they were consistent with the medical evidence as a whole, indicating no acute treatment or hospitalizations related to these health issues. (Tr. 178-179) Lastly, in regard to Plaintiff's physical impairments, the ALJ gave great weight to the non-examining state medical consultants' December 10, 2010 finding of an RFC of light work with avoidance of hazards. (Tr. 180) In that assessment, Dr. Lucy Sauer opined that Plaintiff was limited specifically to the following: occasional lifting or carrying of twenty pounds, frequent lifting or carrying of ten pounds, standing and/or walking for a total of 6 hours in an 8-hour work day, and sitting with normal breaks for a total of 6 hours in an 8-hour work day. (Tr. 581) Dr. Sauer did not provide limitations on the Plaintiff for pushing and/or pulling. (Tr. 581)

In addressing Plaintiff's mental limitations, the ALJ analyzed and gave great weight to Dr. Terry Efird's mental diagnostic evaluation. (Tr. 180) In that assessment, Dr. Efird acknowledged Plaintiff's complaints of feelings associated with depression and anxiety. (Tr. 858) Plaintiff shared with Dr. Efird that he had previously undergone outpatient treatment for mental health at Western Arkansas Counseling and Guidance Center, but no in-patient treatment. (Tr. 858) Approximately a year and a half ago, he was also prescribed Prozac by his primary care physician. (Tr. 858) Plaintiff reported to Dr. Efird that he had previously spent a short time in prison, he had trouble with household chores because of pain, he had problems with relationships, and he had a history of being terminated from employment. (Tr. 859) Dr. Efird's notes reflected that Plaintiff's mood

was generally dysphoric, his affect was somewhat restricted, and there were no remarkable indications of acute emotional distress. (Tr. 859) Plaintiff's speech was within normal limits and his thoughts were primarily logical, relevant and goal-directed. (Tr. 859) Dr. Efird diagnosed Plaintiff with major depressive disorder, panic disorder with agoraphobia, and personality disorder with antisocial and dependent traits. (Tr. 860) In sum, Dr. Efird found Plaintiff to be mildly limited in understanding and remembering complex instructions, carrying out complex instructions, and the ability to make judgments on complex work-related decisions. (Tr. 855) He also found Plaintiff to be moderately limited in his ability to interact with the public, supervisors and co-workers, and in his ability to respond appropriately to usual work situations and changes in a routine work setting. (Tr. 856)

      The medical records also showed that Plaintiff was evaluated by Gary Greenwood, LPC, at Western Arkansas Counseling and Guidance Center. (Tr. 637-640) Mr. Greenwood noted Plaintiff's complaints of feelings associated with depression and anxiety. (Tr. 638) His notes reflected Plaintiff's thoughts were logical and coherent, and he demonstrated no delusions; however, his notes also reflected Plaintiff exhibited slowed motor behavior, was minimally responsive, and had moderately impaired attention and concentration. (Tr. 638) Mr. Greenwood assessed Plaintiff with depression, anxiety, cannabis dependence, and relational problems, and recommended further therapy (Tr. 639-640). There was, however, no evidence in the record that Plaintiff underwent additional therapy. Ultimately, the ALJ afforded Mr. Greenwood's opinion little weight, in that he saw Plaintiff on only one occasion, and he was not an acceptable medical source to make diagnoses. (Tr. 179) The ALJ also noted that Mr. Greenwood did not offer an opinion as to Plaintiff's ability to work. (Tr. 179)

Upon careful review of the record, the Court finds there is substantial evidence to support the ALJ's RFC determination of sedentary work with the limitations set forth above.

## IV. Conclusion

Having carefully reviewed and considered the entire record, the Court finds that substantial evidence supports the ALJ's Decision denying Plaintiff DIB benefits. The ALJ's Decision should be, and it hereby is, affirmed.  Plaintiff's Complaint should be dismissed with prejudice.

DATED this 2nd day of March, 2016.

/s/ Mark E. Ford
HONORABLE MARK. E. FORD
UNITED STATES MAGISTRATE JUDGE